**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

SANDRA SHEERIN,

       Plaintiff,

v.                                     Case No. 3:19-cv-265-J-JRK

ANDREW M. SAUL,[1]
Commissioner of Social Security,

       Defendant.

## OPINION AND ORDER[2]

### I. Status

Sandra Sheerin ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of degenerative joint disease, arthritis, left knee pain, a torn left meniscus, high blood pressure, tinnitus, migraines, anxiety, depression, insomnia, and memory loss. Transcript of Administrative Proceedings (Doc. No. 13; "Tr." or "administrative transcript"), filed May 14, 2019, at 62, 74, 91, 106, 243. Plaintiff filed applications for DIB and SSI on October 13, 2015, alleging an onset disability date of April 20, 2015. Tr. at 213 (DIB); Tr.

---

[1]     Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Nancy A. Berryhill as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 12), filed May 14, 2019; Reference Order (Doc. No. 14), entered May 15, 2019.

at 215 (SSI).[3] The applications were denied initially, Tr. at 62-73, 86, 88, 124-26 (DIB); Tr. at 74-85, 87, 89, 127-29 (SSI), and upon reconsideration, Tr. at 105-19, 120, 122, 134-38 (DIB); Tr. at 90-104, 121, 123, 139-43 (SSI).

On March 14, 2018, an Administrative Law Judge ("ALJ") held a hearing during which she heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 41-61. At the time of the hearing, Plaintiff was fifty-two years old. See Tr. at 45. The ALJ issued a Decision on May 2, 2018, finding Plaintiff not disabled through the date of the Decision. Tr. at 21-34.

Thereafter, Plaintiff requested review of the Decision by the Appeals Council. Tr. at 17. The Appeals Council accepted additional evidence in the form of a brief authored by Plaintiff's counsel. Tr. at 4-5; see Tr. at 210-12 (brief). On January 4, 2019, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On March 4, 2019, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff makes two arguments: 1) "[t]he Commissioner's finding that [Plaintiff] retained the residual functional capacity ('RFC') to perform light work is not supported by substantial evidence" and 2) "[t]he Commissioner failed to give adequate reasons for rejecting the examining opinion of the state agency's own examining

---

[3] Although actually completed on October 13, 2015, see Tr. at 213 (DIB); Tr. at 215 (SSI), the protective filing date of the applications is listed elsewhere in the administrative transcript as September 18, 2015, see, e.g., Tr. at 62 (DIB); Tr. at 74 (SSI).

psychologist, Dr. [Darren] Kirkendall." Plaintiff's Brief (Doc. No. 18; "Pl.'s Br."), filed July 15, 2019, at 1. In making the first argument, Plaintiff specifically contends that "[t]he record does not contain legitimate evidence that [Plaintiff] was able to perform the standing and walking requirements of light work after the decline in her left knee condition . . . ." Pl.'s Br. at 1. On September 13, 2019, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II. The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step

---

[4]    "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 24-34. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since April 20, 2015, the alleged onset date." Tr. at 24 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: arthropathies, essential hypertension, obesity, migraine headaches, depression, and anxiety." Tr. at 24 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meet or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 24 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following RFC:

[Plaintiff can] perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except with no climbing and/or exposure to hazards; only occasional stooping, crouching, crawling, and kneeling. [Plaintiff] is limited to simple, routine tasks of unskilled work with no exposure to the general public and only occasional collaboration with coworkers.

Tr. at 26 (emphasis omitted).

At step four, the ALJ relied on the testimony of the VE and found that Plaintiff is "unable to perform any past relevant work." Tr. at 32 (emphasis and citation omitted). At step five, after considering Plaintiff's age ("49 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ again relied on the testimony of the VE and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 32-33

(emphasis and citation omitted), such as "Route Clerk," "Assembler, Electronic Accessories I," and "Marker II," Tr. at 33. The ALJ concluded that Plaintiff "has not been under a disability . . . from April 20, 2015, through the date of th[e D]ecision." Tr. at 34 (emphasis and citation omitted).

## III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As noted, Plaintiff challenges the ALJ's finding that Plaintiff can perform the amount of standing and walking required for light work and the ALJ's assessment of Dr. Kirkendall's opinions. Plaintiff's arguments are addressed in turn below.[5]

### A. ALJ's RFC Determination

#### 1. Parties' Arguments

Plaintiff argues that in making the RFC determination, "[t]he ALJ failed to recognize that [Plaintiff's] knee condition significantly declined between . . . 2015 and 2018." Pl.'s Br. at 11. Plaintiff points to a December 2017 MRI of her left knee, "[t]he progress notes leading up to the December 2017 left knee MRI," and her testimony at the hearing. Id. at 11-14. According to Plaintiff, the Decision "is focused on [Plaintiff's] psychiatric issues and her usage of medication but very little is actually offered in support of the ALJ's finding that [Plaintiff] could stand/walk for six hours of an eight hour day on a full-time sustained basis." Id. at 11. Plaintiff also contends that "[t]he ALJ failed to specify the length of time that [Plaintiff] could sit, stand and walk—all of which were critical particularly after the decline following the denial of reconsideration." Id. at 16.

Responding, Defendant asserts that the ALJ considered and discussed the December 2017 MRI and the rest of the "medical evidence of record throughout the

---

[5] On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed her claims before that date, the undersigned cites the rules and Regulations that were in effect on the date the claims were filed, unless otherwise noted.

relevant time period related to Plaintiff's physical functioning and cited to specific exhibits tending to show she could perform light work." Def.'s Mem. at 7-8 (citation omitted). Defendant argues the ALJ did specify the amount of time Plaintiff can stand and walk because "the ALJ referenced the definition of light work in specifying her RFC, and by definition, light work requires 6 hours of walking or standing in an 8-hour day." Id. at 10 (citation omitted).

### 2. Applicable Law

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

### 3. ALJ's Decision / Analysis

As noted, the ALJ determined that Plaintiff can perform light work with additional limitations. Tr. at 26. After reviewing the ALJ's Decision as a whole and considering the entire administrative transcript, the undersigned finds that the ALJ's RFC determination is supported by substantial evidence.

The ALJ discussed the medical evidence of record, including the December 2017 MRI and recent treatment notes. Tr. at 28-32.[6] The ALJ noted that treatment notes from 2015 "show [Plaintiff] consistently reported 10/10 pain" and that her "musculoskeletal and psychiatric exams continued to be generally normal but sometimes revealed knee tenderness . . . ." Tr. at 28 (citation omitted); see Tr. at 479, 483, 486, 490 (treatment notes indicating Plaintiff rated her pain a "10/10"); Tr. at 475 (October 28, 2015 treatment note indicating Plaintiff had pain in knee; muscle strength in knees was "5/5"; knees had no swelling, redness, or ecchymosis; her collateral ligaments were "intact medially and laterally"; she had "normal flexion and extension"; but her knees were tender on "medial jointline" and "medial patellar facet" and there were "crepitations with movement" of patellofemoral joint); Tr. at 376, 381 (October 14, 2015 and September 28, 2015 treatment notes indicating Plaintiff had pain in knees, but muscle strength in knees was "5/5"); Tr. at 384, 389 (September 18, 2015 and August 28, 2015 treatment notes indicating Plaintiff's "muscle strength reflex" in patellas was "2/4" and her muscle strength in knees was "5/5").

The ALJ observed that treatment notes from June 2016 show that Plaintiff's "physical exam was largely unremarkable, although she was not able to fully extend her left knee." Tr. at 31 (citation omitted); see Tr. at 595 (June 13, 2016 progress note indicating, "extremities normal, atraumatic, no cyanosis or edema, unable to fully extend left knee"). The ALJ noted that in August 2016, Plaintiff "received a steroid injection in her

---

[6]     The ALJ did not refer to the December 2017 MRI specifically by date, but as noted below, she described the MRI findings and cited pages 7 and 8 of Exhibit 11F, which contain the MRI findings. See Tr. at 32 (Decision); Tr. at 607-08 (Exhibit 11F, pp. 7-8).

left knee and tolerated it well." Tr. at 31 (citation omitted); see Tr. at 580. The ALJ cited the exhibit containing the findings of the December 2017 MRI of Plaintiff's left knee and stated that the MRI "showed severe medial compartment osteoarthritis and a highly attenuated, and partially tom, ACL (likely a chronic rupture with posterior subluxation), small-to-moderate joint effusion, degenerative tear of the posterior medi[al] meniscus, and atrophic patellar tend[i]nopathy." Tr. at 32 (citation omitted); see Tr. at 607-08. The ALJ observed that "in February 2018, [Plaintiff] reported her chronic lower back pain was well-controlled but her left knee osteoarthritis was still problematic." Tr. at 32; see Tr. at 613 (February 19, 2018 treatment note indicating that Plaintiff "report[ed] well controlled chronic lower back pain" and that Plaintiff's "[p]rimary complaints" were "left knee OA[7] pain and pins and needles pain at night").

The ALJ also discussed at length Plaintiff's testimony regarding her pain and activities of daily living, see Tr. at 27-28, but the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e D]ecision," Tr. at 28. Specifically, the ALJ found that Plaintiff's statements "are inconsistent with the overall medical evidence of record that simply does not support the degree of limitation alleged by [Plaintiff]." Tr. at 28.

Plaintiff merely summarizes the evidence of record related to her knee impairment. See Pl.'s Br. at 12-14. Much of her discussion consists of her subjective complaints that

_____

7        "OA" likely stands for "osteoarthritic."

the ALJ found were not entirely consistent with the evidence of record. Plaintiff does not challenge the ALJ's assessment of Plaintiff's subjective complaints. The ALJ sufficiently discussed the medical evidence and Plaintiff's subjective complaints and testimony, and it is evident the ALJ considered the record as a whole. That the ALJ did not refer to every treatment note does not render the Decision unsupported by substantial evidence in this case. See Dyer, 395 F.3d at 1211 (stating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [a reviewing court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole"). The ALJ's RFC finding is supported by substantial evidence. Plaintiff's argument essentially requests a reweighing of evidence. This the Court cannot do. Cornelius, 936 F.2d at 1145.

As to Plaintiff's argument that the ALJ failed to specify the amount of time she can stand and walk, "light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Freeman v. Barnhart, 220 F. App'x 957, 960 (11th Cir. 2007) (quoting SSR 83-10, 1983 WL 31251, at *6). Accordingly, contrary to Plaintiff's assertion, the ALJ's RFC determination makes clear how long Plaintiff can stand and walk because the ALJ specifically restricted her to "light work as defined in 20 [C.F.R. §§] 404.1567(b), 416.967(b)." Tr. at 26 (emphasis omitted).

## B. ALJ's Assessment of Dr. Kirkendall's Opinions

### 1. Parties' Arguments

Plaintiff contends that although "[t]he ALJ stated she was assigning significant weight to [Dr. Kirkendall's] opinion, the ALJ rejected the parts of the opinion that would

result in greater limitation, and failed to provide adequate reasons for rejecting the more limiting parts of the opinion." Pl.'s Br. at 17 (citation omitted). Plaintiff further asserts that "[t]he ALJ failed to address [Dr. Kirkendall's] diagnosis of borderline personality disorder which is a completely different medical condition than an affective disorder or anxiety disorder." Id. at 19. Plaintiff argues that "[t]he ALJ did not explain why she was not accepting the diagnosis" and that "it is not clear that the ALJ even recognized that Dr. Kirkendall diagnosed [Plaintiff] with a different diagnosis than accepted by the ALJ." Id.

Responding, Defendant contends that "[i]n contrast to Dr. Kirkendall's examination findings, Plaintiff's mental status exams and psychiatric exams were generally within normal limits, although they occasionally reflected abnormal mood." Def.'s Mem. at 12 (citations omitted). As to Plaintiff's diagnosis of borderline personality disorder, Defendant asserts that it "says nothing about its functional effects" and that the ALJ "rightly focused on Dr. Kirkendall's opinion on Plaintiff's functional limitations and what the mental status examinations showed about Plaintiff's abilities." Id. at 13-14 (citation omitted).

### 2. Applicable Law

The Regulations establish a hierarchy among medical opinions[8] that provides a framework for determining the weight afforded each medical opinion. See 20 C.F.R. §§ 404.1527, 416.927. Essentially, "the opinions of a treating physician are entitled to more

---

[8]    "Medical opinions are statements from physicians or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"); 20 C.F.R. § 404.1513(a).

weight than those of a consulting or evaluating health professional," and "[m]ore weight is given to the medical opinion of a source who examined the claimant than one who has not." Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1259, 1260 n.5 (11th Cir. 2019). Further, "[n]on-examining physicians' opinions are entitled to little weight when they contradict opinions of examining physicians and do not alone constitute substantial evidence." Id. at 1260 (citing Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5); see also 20 C.F.R. §§ 404.1527(f), 416.927(f); see also McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citation omitted) (stating that "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists").

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), "the ALJ must state with particularity the weight given to different medical

opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz, 825 F.2d at 279); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

### 3. Dr. Kirkendall's Opinions / ALJ's Decision / Analysis

On November 24, 2015, Dr. Kirkendall conducted a psychological evaluation. See Tr. at 425-29. According to Dr. Kirkendall's evaluation note, Plaintiff reported difficulty falling asleep, dysphoric moods, crying spells, hopelessness, loss of usual interest, social withdrawal, excessive apprehension and worry, inflated self-esteem, grandiosity, pressured speech, "flight of ideas," and an "elevated mood." Tr. at 426. Plaintiff stated she is "angered easily" and has "[s]hort-term memory deficits and concentration difficulties." Tr. at 426. Dr. Kirkendall noted that Plaintiff "was acting like she was crying during the evaluation" but that "no tears were observed." Tr. at 426.

Dr. Kirkendall's mental evaluation findings and opinions included the following. Plaintiff "appeared to frequently exaggerate her symptoms." Tr. at 427. Plaintiff was cooperative, but her social skills were "poor." Tr. at 427. Her thought processes were "[c]oherent and goal directed." Tr. at 427. She had an irritated affect and euthymic mood. Tr. at 427.

Dr. Kirkendall opined that Plaintiff's attention, concentration, and recent and remote memory skills are "[m]ildly impaired." Tr. at 427. According to Dr. Kirkendall, Plaintiff's "ability to learn new tasks or perform complex tasks independently" and "ability to follow and understand simple directions and instructions or perform simple tasks independently" are not limited. Tr. at 428-29. Plaintiff's "ability to maintain attention and concentration,"

"ability to maintain a regular schedule," and "ability to appropriately deal with stress" are "moderately limited." Tr. at 428-29. Plaintiff's "ability to make appropriate decisions" and "ability to relate adequately with others" are "markedly limited." Tr. at 429.

The ALJ discussed Dr. Kirkendall's opinions in detail. See Tr. at 29. The ALJ found that the "marked limitations" opined by Dr. Kirkendall "are not supported by the overall medical evidence of record" but that "the remainder of the opinion is consistent with such evidence and supports the limitations included [in the RFC]." Tr. at 29 (citation omitted). The ALJ explained that the marked limitations "appear[ ] to be based on [Plaintiff's] reports only and not on the history found in the medical evidence of her doing much better than suggested at the evaluation for benefits." Tr. at 29.

As noted by the ALJ, Plaintiff's mental status exams and psychiatric exams were generally normal. Tr. at 28-31; see, e.g., Tr. at 544 (November 16, 2016 treatment note indicating that Plaintiff was alert and oriented to person, place, and time; her "[t]hought process was coherent and well organized"; her "associations were intact"; she "denie[d] suicidal ideation, homicidal ideation and delusions"; her "[f]und of knowledge was adequate"; her "[f]ocus and concentration [were] adequate"; her "[i]mmediate and recent memory were intact"; and her "insight and judgment were fair"); Tr. at 736-39 (October 1, 2016 treatment note indicating Plaintiff was alert, she was in no acute distress, she was cooperative, she was not suicidal, but she was "demanding anxiet[y] medicine" and threatening to "go and ge[t] street drugs"); Tr. at 572, 587 (August 18, 2016 and June 28, 2016 treatment notes indicating Plaintiff was alert and oriented to person, place and time; she maintained good eye contact; she "presented as calm and cooperative"; her speech

was regular and spontaneous; she "denie[d] suicidal ideation, homicidal ideation and delusions"; her "[f]und of knowledge was adequate"; her "[f]ocus and concentration [were] adequate based on spelling words forward and backwards"; her "[i]mmediate and recent memory was intact based on ability to recall past and present events"; her insight and judgment were fair; and "[t]here was no abnormal involuntary movement present"); Tr. at 523 (January 19, 2016 treatment note indicating Plaintiff maintained "good eye contact," her speech was normal, her thought process was logical, her "thought content" was "absent of suicidal or homicidal intent," and her judgment and insight were "fair to good"); Tr. at 496 (January 6, 2016 emergency department note indicating Plaintiff was anxious but alert and in "no acute distress"); Tr. at 519 (January 6, 2016[9] treatment note indicating Plaintiff was "oriented to person, place, and time"); Tr. at 527 (November 13, 2015 treatment note indicating Plaintiff maintained "good eye contact," her speech was normal, her thought process was logical, her "thought content" was "absent of suicidal or homicidal intent," and her judgment and insight were "fair to good").

The ALJ also recognized that at times Plaintiff "had a depressed mood and flat affect," "did not maintain good eye contact," and "was guarded, withdrawn, irritable, and anxious." Tr. at 31 (citation omitted); see Tr. at 544 (November 16, 2016 treatment note indicating Plaintiff did not maintain good eye contact, she "presented as guarded and withdrawn," her "mood was irritable and anxious," and her affect was "congruent with mood and dysphoric"); Tr. at 572, 587 (August 18, 2016 and June 28, 2016 treatment notes

---

[9] The treatment note was signed by the physician's assistant on January 6, 2016, see Tr. at 516, 520, but it was signed by the physician on January 8, 2016, see Tr. at 520.

indicating Plaintiff's mood was "depressed" and her affect was "flat, congruent with mood and dysphoric").

Although, as the ALJ noted, not all treatment notes show normal mental exam findings, the undersigned finds that substantial evidence supports the ALJ's assessment of Dr. Kirkendall's opinions, and it is not for this Court to reweigh the evidence. See Crawford, 363 F.3d 1155, 1158-59; Cornelius, 936 F.2d at 1145. It is clear the ALJ considered the record as a whole. Moreover, to the extent Plaintiff relies on her subjective complaints, the ALJ found them not to be entirely consistent with the overall evidence of record, and Plaintiff does not challenge this finding.

As to Plaintiff's argument regarding Dr. Kirkendall's diagnosis of borderline personality disorder, simply being diagnosed with an impairment does not automatically translate into work-related limitations that an ALJ must include in an RFC. See Moore, 405 F.3d at 1213 n.6 (stating that "the mere existence of [some] impairments does not reveal the extent to which they limit [a plaintiff's] ability to work"); McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986) (recognizing that the severity of an impairment "must be measured in terms of its effect upon [a claimant's] ability to work"). The ALJ considered the limitations that according to Dr. Kirkendall resulted from Plaintiff's diagnosed impairments. In doing so, the ALJ rejected the marked limitations opined by Dr. Kirkendall, and as noted above, the ALJ provided adequate reasons for doing so that are supported by substantial evidence.

## V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's

Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of

42 U.S.C. §§ 405(g) and 1383(c)(3) **AFFIRMING** the Commissioner's final decision.

2.      The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on March 24, 2020.


_____
JAMES R. KLINDT
United States Magistrate Judge


bhc
Copies to:
Counsel of Record